**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3: 15-CR-108 |
| | : | |
| vs. | : | (Judge Munley) |
| | : | |
| DARIAN TENSLEY | : | (Electronically Filed) |

**SENTENCING MEMORANDUM AND OBJECTION TO THE PRESENTENCE REPORT**

And now comes the Defendant, Darian Tensley ("Tensley"), by his attorney, Ingrid Cronin, and files the following sentencing memorandum.

**I.   Procedural Background**

On June 2, 2015, the government filed an indictment that charged Tensley with assault on a federal officer, a violation of 18 U.S.C. §§ 111(a) and (b). (Doc. 1). On October 13, 2015, the Federal Public Defender was appointed to represent Tensley. (Doc. 9).  On March 1, 2016, this Court issued a scheduling order that set plea and sentencing for June 15, 2016, and ordered the pre-sentence report be disclosed by April 26, 2016.   (Doc. 33).  Tensley will be pleading guilty to a violation of 18 U.S.C. §§ 111(a), a felony assault on a federal officer with an eight year maximum sentence.  The presentence report was prepared by the United States Probation Department, released on April 26, 2016, and revised on June 6, 2015.  This memorandum is prepared in anticipation of Darian Tensley's plea and sentencing on June 15, 2016.

## II. Argument

The Court of Appeals for the Third Circuit has developed a three-step sentencing procedure to be followed by district courts subsequent to the United States Supreme Court's landmark decision in *United States v. Booker*, 543 U.S. 220 (2005). The procedure first articulated in *United States v. Gunter*, 462 F.3d 237 (3rd Cir. 2006), has become familiar in this Circuit "and has been effectively ratified by the Supreme Court's decision in *Gall v. United States*, 128 S.Ct. 587 (2007)." *United States v. Levinson*, 543 F.3d 190, 194 (3d Cir. 2008). The three-step process is as follows:

> 1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before Booker.
>
> 2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre- Booker case law, which continues to have advisory force.
>
> (3) Finally, they are required to exercise their discretion by considering the relevant §3553(a) factors.

*Gunter*, 462 F.3d at 247 (internal quotations and citations omitted). A discussion of each step in this process follows.

With regard to the first two steps in the three-step sentencing process set forth by the Court of Appeals, the sentencing guidelines calculated by the probation officer in the PSR reflect a Total Offense Level of 13, criminal history

category of VI and an advisory guideline range of 33 - 41 months. (PSR ¶ 90).

Tensley's plea is to a violation of 18 U.S.C. § 111(a). Tensley objects to a two level increase for bodily injury to the correctional officer. (PSR ¶ 15). The injuries detailed in PSR ¶ 15 ("lacerations to his lips and elbow") and the evidence provided by the government do not support this enhancement. The government does not have evidence sufficient to prove "bodily injury" under the Guidelines, and the injuries inflicted in this case simply do not qualify for the enhancement.

"Bodily injury" means any significant injury; <u>e.g.</u>, an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." U.S.S.G. § 1B1.1,cmt. n.1 (B). The Staff Medical Assessment of Correctional Officer James Seidel indicated the following: "Suffered contusions to upper and lower lips/swelling, small laceration, interior lower lip, small laceration left elbow, contusion left hand base of ring finger." (Memorandum To File, prepared by Lieutenant Thomas M. Chmely of FCI Schuylkill, attached as Exhibit A). Officer Seidel followed up with the local hospital, but, according to the government, received no treatment. Tensley requested hospital records of Seidel from the government, but the government had none in its possession. The photographs of the officer's face depict a minor cut on the inside of the officer's lower and a small amount of blood on his upper lip. The picture of the injury to

the officer's left elbow depicts a superficial insult. (Photographs provided by the government attached as Exhibit B).

Courts have held that to be "significant" a bodily injury "need not interfere completely with the injured person's life but cannot be wholly trivial and, while it need not last for months or years, must last for some meaningful period." *United States v. Mejia-Canales*, 467 F.3d 1280, 1282 (10th Cir. 2006) citing *United States v. Brown*, 200 F.3d 700, 709 (10th Cir. 1999). Mejia-Canales was a federal inmate who ignored orders to stop walking away from officers. When stopped, Mejia-Canales "turned and struck the officer twice with his fist, once on the mouth and once on the forehead." *Mejia-Canales*, 467 F.3d at 1281. The injuries from the two punches were "a small laceration on the inside of his mouth and a red mark on his forehead, and that, per jail policy, he reported to the infirmary, where he was provided ibuprofen for his forehead and an oral gel for the cut in his mouth." *Id*. The defense objected to the enhancement for bodily injury but the district court denied the objection. However, the Tenth Circuit agreed with Mejia-Canales and ruled that "the evidence was insufficient to support the enhancement." *Mejia-Canales*, 467 F.3d at 1282. The Court wrote that in every reported case, the injuries in cases where the bodily injury enhancement was challenged and upheld, the injuries were either more severe, were painful and lasting, or were injuries for which medical treatment would ordinarily be sought. *Id*. The Court cited 13 cases

and the basis on which the enhancement was upheld. We mention two here.  In *United States v. Hamm*, 13 F.3d 1126, 1127-28 (7th Cir. 1994), the victim suffered bumps and bruises, had the wind knocked of him, and had a back injury requiring chiropractic treatment. *Id*. at 1283.  In *United States v. Robinson*, 20 F.3d 270, 278-79 (7th Cir. 1994), the enhancement was upheld where victims were sprayed with mace and experienced pain for hours and residual effects for days. *Id.*  In contrast to these examples and others, the Court found that the record in *Mejia-Canales* indicated that the victim's visible injuries were less severe and that there was "no evidence that the injuries were painful or lasting." *Id*.

In evaluating the district court's application of the bodily-injury enhancement, "the focus of the inquiry is *not* on the actions of the defendant, but rather on the injury sustained by the victim." *United States v. Zuniga*, 720 F.3d 587, 595 (5th Cir. 2013) citing *United States v. Guerrero*, 169 F.3d 933, 946 (5th Cir. 1999)(additional citation omitted). In the case before this Court, the sparse record does not support the enhancement.  There are no medical records to establish that the officer received any medical treatment for the cut on the inside of his lower lip or for the miniscule insult to his left elbow. Further, the record is devoid of evidence as to pain or any lasting effects.   Consequently, Tensley respectfully requests this Court grant his objection to the two level enhancement pursuant to U.S.S.G. § 2A2.4(b)(2).  Should the Court grant his objection,

Tensley's guidelines would be Criminal History Category VI and Total Offense Level 11 with an advisory guideline range of 27 – 33 months.

Having addressed the first two steps in the three-step sentencing process set forth in *Gunter*, supra, a discussion of the §3553 factors remains.

The primary directive in Section 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." Section 3553(a)(2) states that such purposes are:

(a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(b) to afford adequate deterrence to criminal conduct;

(c) to protect the public from further crimes of the defendant; and
(d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, 18 U.S.C. § 3553(a) further directs sentencing courts to consider the following factors:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant (§ 3553(a)(1));
(2) the kinds of sentence available (§ 3553(a)(3));
(3) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct (§ 3553(a)(6)); and
(4) the need to provide restitution to any victims of the offense. (§ 3553(a)(7)).

The nature and circumstances of the offense have been set forth in the PSR. (PSR ¶¶ 4- 7). On August 14, 2013, Corrections Officer James Seidel of FCI Schuylkill, was doing random pat down searches of inmates as they left the dining

room.  As Seidel searched Tensley, Tensley felt that he was being sexually assaulted.  He reacted, and while he does not have a clear memory of exactly what happened, he does accept responsibility for his actions, and wishes to plead guilty.  Mr. Tensely reacted to what he perceived as a sexual assault and he did not have any contraband on his person at the time of the search.

The history and characteristics of the Defendant must next be considered.  18 U.S.C. § 3553(a)(1).  Mr. Tensely has had countless encounters with law enforcement officers.   The PSR reports that Mr. Tensley has 33 criminal history points for prior convictions and an additional 2 points as he committed the instant offense while serving a sentence. (PSR ¶¶ 61,62).   12 of the 33 points are for driving with a suspended license.  His other offenses are primarily drug related and that history began when he was 17 years old.  (PSR ¶ 35).  His mother and half-sister were involved in trafficking drugs since his adolescence.  His childhood was marred by arrests beginning at age 10. (PSR ¶ 23). Unfortunately, Tensley's father's own struggles and his mother's limitations made it impossible for them to guide their son.  This big, powerful young man lacked an anchor.  The chaos of his early life and his traumatic experiences while incarcerated may have contributed to the psychological issues Tensley reported since 2003. He has extensive psychological records from his time at FCI Raybrook, USP Lewisburg, and FCI Schuylkill.  Fortunately, Tensley believes that his current medication regiment is

helping. A prison evaluation done in March of 2014 noted that Tensley's "potential for harm to others is judged to be low." A bright light in Tensley's life is his 17 year old daughter. She is doing well with solid plans for her future. Tensley is in regular contact with her, something that many men who have been incarcerated for a substantial period of time cannot sustain. Tensley reports that he has had no disciplinary incidents in the last two years. His focus is to do all he can to be prepared to resume his life in Florida when he is released from the Bureau of Prisons. Consequently, Tensley would like to be designated to an institution there to make it easier to see family members. He has been separated from them for a long time.

Turning to the need for an appropriate punishment, to deter further criminal conduct and to protect society, it is respectfully suggested that a sentence below the guidelines is appropriate as it will accomplish the goals of punishing Tensley, and adequately protecting the public. Should this Court decide to run this sentence consecutively to Mr. Tensely's current sentence, he will be 50 years old when the sentence imposed by this Court begins to run. [1]  A sentence of 24 months

---

[1] The PSR ¶ 15 states that pursuant to U.S.S.G. §5G1.3(a), the sentence shall be imposed to run consecutively to the undischarged term of imprisonment. However, "in the aftermath of *Booker*, the Federal Sentencing Guidelines - once a mandatory regime circumscribing the discretion of district court judges – are effectively advisory." *United States v. Davis*, 407 F.3d 162,163 (3d Cir. 2005)(quoting *Booker*, 125 S. Ct. at 757). In sum, this Court has discretion to run

confinement will be adequate, under all of the circumstances, to punish Tensley, protect the public, and avoid unwarranted disparities among similarly situated defendants.

In summation, it is respectfully submitted that Tensley's work to stabilize his mental health, his demonstrated connection to his daughter, and the reality that this sentence may not be served until Tensley is 50 years old and consideration of the Section 3553 factors leads to the conclusion that a sentence of 24 months is the most reasonable sentence in this case notwithstanding the advisory guidelines. It is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).

---

this sentence concurrently or consecutively to the undischarged term of incarceration.

WHEREFORE, the Defendant, Darian Tensley, respectfully requests this Honorable Court, consistent with the framework of the Sentencing Guidelines, 18 U.S.C. § 3553 and *United States v. Booker*, impose a sentence of 24 months

Respectfully submitted,


Date: June 9, 2016	s/Ingrid S. Cronin
**Ingrid S. Cronin**
**Assistant Federal Public Defender**
**Attorney ID# PA61289**
116 North Washington Avenue, Suite 2-C
Scranton, Pennsylvania  18503-1800
(570) 343-6285
Fax:  (570) 343-6225
E-mail:  ingrid_cronin@fd.org
Attorney for Darian Tensley

# **CERTIFICATE OF SERVICE**

I, Ingrid S. Cronin, Assistant Federal Public Defender, do hereby certify that this document, the foregoing **Sentencing Memorandum**, will be delivered via email to the following:

>Todd Hinkley, Esq.
>Assistant United States Attorney

and by placing the same in the United States mail, first class, postage prepaid, at Scranton, Pennsylvania, addressed to the following:

>Mr. Darian Tensley

Date: June 9, 2016                                    s/Ingrid S. Cronin
                                                                  **Ingrid S. Cronin**
                                                                  **Assistant Federal Public Defender**